EXHIBIT 1

| MAKER: | ADKINS LAND GROUP, INC. | | |
|---|---|---|---|
| ADDRESS: | 17505 W. CATAWBA AVE. STE. 350 | | ...2528 |
| | | | Account Number |
| | CORNELIUS, NC | | 00024 |
| | 28031-8068 | | Note Number |

# BB&T

## NOTE MODIFICATION AGREEMENT

| $2,578,911.61 | $3,000,000.00 | 02/14/2007 | 08/23/2010 |
|---|---|---|---|
| Modified Principal Amount | Original Principal Amount | Original Date | Modification Date |

This Note Modification Agreement (hereinafter "Agreement") is made and entered into this 23rd day of August, 2010 by and between Adkins Land Group, Inc., maker(s), co-maker(s), endorser(s), or any other obligor(s) on the Promissory Note (as defined below), hereinafter referred to jointly and severally as "Borrower"; and Branch Banking and Trust Company, a North Carolina banking corporation, hereinafter referred to as "Bank"; and Waterfront Group NC, LLC; Landstar Development, LLC; William N. Adkins; Lavinia Adkins; and Mark R. Adkins, owners other than Borrower (if any) of any property pledged to secure performance of Borrower's obligations to Bank, hereinafter referred to jointly and severally as Debtor(s)/Grantor(s).

Borrower has previously executed a Promissory Note payable to Bank (including all renewals, extensions and modifications thereof, collectively "Promissory Note"), such Promissory Note being more particularly identified by description of the original amount and date set forth above; and Borrower and Bank agree that such Promissory Note be modified only to the limited extent as is hereafter set forth; that all other terms, conditions, and covenants of such Promissory Note remain in full force and effect, and binding between Borrower and Bank; and Debtor(s)/Grantor(s), if different from Borrower, have agreed to the terms of this Agreement; NOW, THEREFORE, in mutual consideration of the premises, the sum of Ten Dollars ($10) and other good and valuable consideration, each to the other parties paid, the parties hereto agree that said Promissory Note is amended and restated and hereinafter described:

☐ Borrower shall pay a prepayment fee as set forth in the Prepayment Fee Addendum attached hereto.

**INTEREST RATE, PRINCIPAL AND INTEREST PAYMENT TERM MODIFICATIONS** (To the extent no change is made, existing terms continue. Sections not completed are deleted.)

Interest shall accrue from the date hereof on the unpaid balance outstanding from time to time at the:

☐ Fixed rate of _____% per annum.
☐ Variable rate of the Bank's Prime Rate plus _____% per annum to be adjusted _____ as the Bank's Prime Rate changes.
☐ As of the Modification Date, any fixed, floating or average maximum rate and fixed minimum rate of the Promissory Note(s) are hereby deleted. If checked here ☐, the interest rate will not exceed a(n) ☐ fixed ☐ average maximum rate of _____ or a ☐ floating maximum rate of the greater of _____% or the Bank's Prime Rate; and the interest rate will not decrease below a fixed minimum annual rate of _____%. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: ☐ when the Note is repaid in full by Borrower ☐ annually beginning on _____.
☐ _____

Principal and interest is payable as follows

☒ Principal (plus any accrued interest not otherwise scheduled herein)       )is due in full at maturity on 11/15/2010
☐ Principal plus accrued interest

☐ Payable in consecutive _____ installments of ☐ Principal ☐ Principal and Interest commencing on _____ and continued on the same day of each calendar period thereafter, in _____ equal payments of $_____, with one final payment of all remaining principal and accrued interest due on _____
☐ Choice.line Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining principal and accrued interest due on _____.
☒ Accrued interest is payable monthly commencing on 09/15/2010 and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on 11/15/2010.
☐ Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of this Note. Borrower understands the payment may increase if interest rates increase.
☐ Prior to an event of default, Borrower may borrow, repay, and reborrow pursuant to the terms of the Loan Agreement dated _____, between Borrower and Bank
☐ _____

☐ Borrower hereby authorizes Bank to automatically draft from its demand deposit, or savings account(s) with Bank or other bank, any payment(s) due under this Note on the date(s) due. Borrower shall provide appropriate account number(s) for account(s) at Bank or other bank.

The following scheduled payment(s) is (are) deferred:

☐ $_____ principal       }
☐ $_____ interest         } Payments due on _____

is (are) hereby deferred. Payments will resume on _____ according to the schedule contained herein or to the existing schedule (if no other changes are made herein).

Borrower shall pay to Bank, or order, a late fee in the amount of four percent (4%) of any installment past due for fifteen (15) or more days. Where any installment payment is past due for fifteen (15) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to non-sufficient funds.

In addition to Bank's right of set-off and other liens and security interests granted to Bank, Borrower hereby grants to Bank a security interest in all of its deposit accounts with and investment property held by Bank, which shall serve as collateral for the indebtedness and obligations evidenced by this Amended and Restated Note.

The Promissory Note, as amended and restated, and the performance of the terms of any agreement or instrument relating to, evidencing, or securing the Promissory Note shall be additionally secured by collateral hereinafter described, a new security instrument shall be executed by Borrower, and/or Debtor(s)/Grantor(s), and all other steps necessary to perfect or record the Bank's lien with priority acceptable to Bank shall be taken.

Deed(s) of Trust / N.C. Mortgage(s) granted in favor of Bank as beneficiary / mortgagee:

☐ dated _____ in the maximum principal amount of $_____

granted by _____

Security Agreement(s) conveying a security interest to Bank:

☒ dated August 23, 2010 given by Waterfront Group NC, LLC

☐ Securities Account Pledge and Security Agreement dated _____, executed by _____.

☐ Control Agreement(s) dated _____, covering     ☐ Deposit Account(s)    ☐ Investment Property
                                                     ☐ Letter of Credit Rights    ☐ Electronic Chattel Paper

☐ Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated _____, executed by _____.

☐ Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____, executed by _____.

☐ Assignment of Life Insurance Policy as Collateral dated _____, executed by _____.

☒ Amendment to Forbearance Agreement dated August 23, 2010, executed by ☒ Borrowers, ☒ Guarantor(s), and ☒ Others.

This Agreement and the Promissory Note shall be construed in accordance with and governed by the laws of the State of North Carolina.

If the Agreement is signed by more than one person or entity, the Agreement shall be the joint and several obligation of all signors and the property and liability of each and all of them. It is expressly understood and agreed that this Agreement is a modification only and not a novation. The original obligation of Borrower as evidenced by the Promissory Note is not extinguished hereby. It is also understood and agreed that except for amendments contained herein said Promissory Note, and any other Loan Documents or Agreements evidencing securing or relating to the Promissory Note and all singular terms and conditions thereof, shall be and remain in full force and effect. This Agreement shall not release or effect the liability of any co-makers, obligors, endorsers or guarantors of said Promissory Note. Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to terms of this Agreement, waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank, including without limitation the Promissory Note. Bank expressly reserves all rights as to any party with right of recourse on the aforesaid Promissory Note.

In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as any interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in any variable interest rate based on an index such as the Bank's Prime Rate; provided that unless elected otherwise above, the fixed payment amount shall not be reduced below the original fixed payment amount. However, Bank shall have the right, in its sole discretion, to lower the fixed payment amount below the original payment amount. Notwithstanding any other provision contained in this Agreement, in no event shall the provisions of this paragraph be applicable to any Promissory Note which requires disclosures pursuant to the Consumer Protection Act (Truth-In-Lending Act), 15 USC § 1601, et seq., as implemented by Regulation Z.

Borrower agrees that the only interest charge is the interest actually stated in this Agreement, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Agreement, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Agreement and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Agreement and the loan shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due.

The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Promissory Note(s) permitted by N.C.G.S. 24-1.1.

If the words "Prime Rate", "Bank Prime Rate", "BB&T Prime Rate", "Bank's Prime Rate" or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time and adopted as its Prime Rate at its executive offices in Winston-Salem, North Carolina, and they do not constitute a representation of the Bank's lowest or a preferred rate. The Bank makes loans at interest rates both above and below the Prime Rate and uses indexes other than the Prime Rate.



Unless otherwise provided herein, it is expressly understood and agreed by and between Borrower, Debtor(s)/Grantor(s), and Bank that any and all collateral (including but not limited to real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper, and equipment) given as security to insure faithful performance by Borrower(s) and any other third party of any and all obligations to Bank, however created, whether now existing or hereafter arising, shall remain as security for the Promissory Note as modified hereby.

It is understood and agreed that if Bank has released collateral herein, it shall not be required or obligated to take any further steps to release said collateral from any lien or security interest unless Bank determines, in its sole discretion, that it may do so without consequence to its secured position and relative priority in other collateral; and unless Borrower bears the reasonable cost of such action. No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Bank, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same, or of any other right on any further occasion. Each of the parties signing this Agreement regardless of the time, order or place of signing waives presentment, demand, protest, and notices of every kind, and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there is available to the Bank collateral for the Promissory Note, as modified, and to the additions or releases of any other parties or persons primarily or secondarily liable. Whenever possible the provisions of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. All rights and obligations arising hereunder shall be governed by and construed in accordance with the laws of the same state which governs the interpretation and enforcement of the Promissory Note.

From and after any event of default under this Agreement, the Promissory Note, or any related deed of trust, security agreement or loan agreement, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of North Carolina; and further that such rate shall apply after judgment. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate until such principal and interest have been paid in full. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

Unless otherwise required under a Loan Agreement or Forbearance Agreement, if applicable, and as long as any indebtedness evidenced by this Promissory Note, as modified by this Agreement remains outstanding or as long as Bank remains obligated to make advances, the undersigned shall furnish annually an updated financial statement in a form satisfactory to Bank, which, when delivered shall be the property of the Bank. Further, the undersigned agree to provide any and all documentation requested by the Bank in order to verify the identity of the undersigned in accordance with the USA Patriot Act.

(SIGNATURES ON FOLLOWING PAGE)

③

# BB&T

## NOTE MODIFICATION SIGNATURE PAGE

| | | | |
|---|---|---|---|
| Borrower | ADKINS LAND GROUP, INC. | | |
| Account Number: | ~~2528~~ | Note Number | 00024 |
| Modification Amount: | $2,578,911.61 | Modification Date: | August 23, 2010 |

**Notice of Right to Copy of Appraisal:** If a 1-4 family residential dwelling is pledged as collateral for this Note Modification Agreement, you, the undersigned, have a right to a copy of the real estate appraisal report used in connection with your application for credit. You must forward your request to the Bank no later than 90 days after the date of this Note Modification Agreement. In your request letter, please provide your name, mailing address, appraised property address, the date of this Note Modification Agreement, and the account and note numbers shown on the front of this Note Modification Agreement.

**IN WITNESS WHEREOF,** the undersigned, on the day and year first written above, have caused this Note Modification Agreement to be executed under seal.

ADKINS LAND GROUP, INC.

By: _____ (SEAL)
WILLIAM N. ADKINS, President

WATERFRONT GROUP NC, LLC

By: _____ (SEAL)
WILLIAM N. ADKINS, Member Manager

LANDSTAR DEVELOPMENT, LLC

By: _____ (SEAL)
WILLIAM N. ADKINS, Member Manager

_____
WILLIAM N. ADKINS

_____
MARK R. ADKINS

_____
LAVINIA ADKINS

BRANCH BANKING AND TRUST COMPANY

ATTEST: _____    By: _____ (SEAL)
Sean Marsden, Assistant Vice President

[Notary pages follow]

<u>Acknowledgments</u>

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Waterfront Group NC, LLC a North Carolina Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Waterfront Group NC, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public
My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Landstar Development, LLC a Tennessee Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Landstar Development, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public
My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be the President of Adkins Land Group, Inc. a Delaware Corporation, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized President of said Adkins Land Group, Inc. by signing the name of the Corporation by himself as President.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public
My Commission Expires: 7/28/12

⑤

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared William N. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)                                   _____
                                         Notary Public
                                         My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Mark R. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)                                   _____
                                         Notary Public
                                         My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Lavinia Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and she acknowledged that he executed the foregoing instrument for the purposes therein contained.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)                                   _____
                                         Notary Public
                                         My Commission Expires: 7/28/12

ACCOUNT # / NOTE #

⑥

| MAKER: | WATERFRONT GROUP NC, LLC | **BB&T** | 1472320546 |
|---|---|---|---|
| ADDRESS: | 17505 W. CATAWBA AVE. STE. 350 | | Account Number |
| | CORNELIUS, NC | NOTE MODIFICATION AGREEMENT | 00004 |
| | 28031-8068 | | Note Number |

| $6,243,956.25 | $9,000,000.00 | 03/21/2008 | 08/23/2010 |
|---|---|---|---|
| Modified Principal Amount | Original Principal Amount | Original Date | Modification Date |

This Note Modification Agreement (hereinafter "Agreement") is made and entered into this 23rd day of August, 2010 by and between Waterfront Group NC, LLC, maker(s), co-maker(s), endorser(s), or any other obligor(s) on the Promissory Note (as defined below), hereinafter referred to jointly and severally as "Borrower", whether one or more; Branch Banking and Trust Company, a North Carolina banking corporation, hereinafter referred to as "Bank"; and Landstar Development, LLC, Adkins Land Group, Inc., William N. Adkins, Lavinia Adkins, and Mark R. Adkins, owners other than Borrower (if any) of any property pledged to secure performance of Borrower's obligations to Bank, hereinafter referred to jointly and severally as Debtor(s)/Grantor(s).

Borrower has previously executed a Promissory Note payable to Bank (including all renewals, extensions and modifications thereof, collectively "Promissory Note"), such Promissory Note being more particularly identified by description of the original amount and date set forth above; and Borrower and Bank agree that such Promissory Note be modified only to the limited extent as is hereafter set forth; that all other terms, conditions, and covenants of such Promissory Note remain in full force and effect, and binding between Borrower and Bank; and Debtor(s)/Grantor(s), if different from Borrower, has agreed to the terms of this Agreement; NOW, THEREFORE, in mutual consideration of the premises, the sum of Ten Dollars ($10) and other good and valuable consideration, each to the other parties paid, the parties hereto agree that said Promissory Note is modified as hereinafter described:

☐   Borrower shall pay a prepayment fee as set forth in the Prepayment Fee Addendum attached hereto.

**INTEREST RATE, PRINCIPAL AND INTEREST PAYMENT TERM MODIFICATIONS (To the extent no change is made, existing terms continue. Sections not completed are deleted.)**

Interest shall accrue from the date hereof on the unpaid balance outstanding from time to time at the:

☐   Fixed rate of _____% per annum.
☐   Variable rate of the Bank's Prime Rate plus _____% per annum to be adjusted _____ as the Bank's Prime Rate changes.
☐   As of the Modification Date, any fixed, floating or average maximum rate and fixed minimum rate in effect by virtue of the Promissory Note(s) are hereby deleted. If checked here ☐, the interest rate will not exceed a(n) ☐ fixed ☐ average maximum rate of _____ or a ☐ floating maximum rate of the greater of _____% or the Bank's Prime Rate; and the interest rate will not decrease below a fixed minimum annual rate of _____%. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: ☐ when the Note is repaid in full by Borrower ☐ annually beginning on _____.
☐   _____

Principal and Interest is payable as follows

☒   Principal (plus any accrued interest not otherwise scheduled herein)   )is due in full at maturity on 11/15/2010
☐   Principal plus any accrued interest

☐   Payable in consecutive _____ installments of ☐ Principal   ☐ Principal and Interest commencing on _____ and continued on the same day of each calendar period thereafter, in _____ equal payments of $_____, with one final payment of all remaining principal and accrued interest due on _____
☐   ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining principal and accrued interest due on _____.
☒   Accrued interest is payable monthly commencing on 09/15/2010 and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on 11/15/2010.
☐   Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of this Note. Borrower understands the payment may increase if interest rates increase.
☐   Prior to an event of default, Borrower may borrow, repay, and reborrow pursuant to the terms of the Loan Agreement dated _____, between Borrower and Bank
☐   _____
☐   Borrower hereby authorizes Bank to automatically draft from its demand deposit, or savings account(s) with Bank or other bank, any payment(s) due under this Note on the date(s) due. Borrower shall provide appropriate account number(s) for account(s) at Bank or other bank.

The following scheduled payment(s) is (are) deferred:

☐   $ _____ principal   )
☐   $ _____ interest    )  Payments due on _____
                         )

is (are) hereby deferred. Payments will resume on _____ according to the schedule contained herein or to the existing schedule (if no other changes are made herein).

Borrower shall pay to Bank, or order, a late fee in the amount of four percent (4%) of any installment past due for fifteen (15) or more days. Where any installment payment is past due for fifteen (15) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to non-sufficient funds.

1472 NC NB                    Page 1 of 4                    ⑦

In addition to Bank's right of set-off and other liens and security interests granted to Bank, Borrower hereby grants to Bank a security interest in all of its deposit accounts with and investment property held by Bank, which shall serve as collateral for the indebtedness and obligations evidenced by this Agreement.

The Promissory Note, as modified, and the performance of the terms of any agreement or instrument relating to, evidencing, or securing the Promissory Note shall be additionally secured by collateral hereinafter described, a new security instrument shall be executed by Borrower, and/or Debtor(s)/Grantor(s), and all other steps necessary to perfect or record the Bank's lien with priority acceptable to Bank shall be taken.

Deed(s) of Trust / N.C. Mortgage(s) granted in favor of Bank as beneficiary / mortgagee:

☐  dated _____ in the maximum principal amount of $_____
    granted by_____.

Security Agreement(s) conveying a security interest to Bank:

☒  dated August 23, 2010 given by Waterfront Group NC, LLC
☐  Securities Account Pledge and Security Agreement dated _____, executed by _____.
☐  Control Agreement(s) dated _____, covering     ☐ Deposit Account(s)   ☐ Investment Property
                                                    ☐ Letter of Credit Rights  ☐ Electronic Chattel Paper
☐  Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated _____, executed by _____.
☐  Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____, executed by _____.
☐  Assignment of Life Insurance Policy as Collateral dated _____, executed by _____.
☒  Amendment to Forbearance Agreement dated August 23, 2010, executed by ☒ Borrowers, ☒ Guarantor(s), and ☒ Others.

This Agreement and the Promissory Note shall be construed in accordance with and governed by the laws of the State of North Carolina.

If the Agreement is signed by more than one person or entity, the Agreement shall be the joint and several obligation of all signors and the property and liability of each and all of them. It is expressly understood and agreed that this Agreement is a modification only and not a novation. The original obligation of Borrower as evidenced by the Promissory Note is not extinguished hereby. It is also understood and agreed that except for amendments contained herein said Promissory Note, and any other Loan Documents or Agreements evidencing securing or relating to the Promissory Note and all singular terms and conditions thereof, shall be and remain in full force and effect. This Agreement shall not release or affect the liability of any co-makers, obligors, endorsers or guarantors of said Promissory Note. Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to terms of this Agreement, waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank, including without limitation the Promissory Note. Bank expressly reserves all rights as to any party with right of recourse on the aforesaid Promissory Note.

In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as any interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in any variable interest rate based on an index such as the Bank's Prime Rate; provided that unless elected otherwise above, the fixed payment amount shall not be reduced below the original fixed payment amount. However, Bank shall have the right, in its sole discretion, to lower the fixed payment amount below the original payment amount. Notwithstanding any other provision contained in this Agreement, in no event shall the provisions of this paragraph be applicable to any Promissory Note which requires disclosures pursuant to the Consumer Protection Act (Truth-In-Lending Act), 15 USC § 1601, et seq., as implemented by Regulation Z.

Borrower agrees that the only interest charge is the interest actually stated in this Agreement, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Agreement, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Agreement and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Agreement and the loan shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due.

The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Promissory Note(s) permitted by N.C.G.S. 24-1.1.

If the words "Prime Rate", "Bank Prime Rate", "BB&T Prime Rate", "Bank's Prime Rate" or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time and adopted as its Prime Rate at its executive offices in Winston-Salem, North Carolina, and they do not constitute a representation of the Bank's lowest or a preferred rate. The Bank makes loans at interest rates both above and below the Prime Rate and uses indexes other than the Prime Rate.

Unless otherwise provided herein, it is expressly understood and agreed by and between Borrower, Debtor(s)/Grantor(s), and Bank that any and all collateral (including but not limited to real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper, and equipment) given as security to insure faithful performance by Borrower(s) and any other third party of any and all obligations to Bank, however created, whether now existing or hereafter arising, shall remain as security for the Promissory Note as modified hereby.



It is understood and agreed that if Bank has released collateral herein, it shall not be required or obligated to take any further steps to release said collateral from any lien or security interest unless Bank determines, in its sole discretion, that it may do so without consequence to its secured position and relative priority in other collateral; and unless Borrower bears the reasonable cost of such action. No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Bank, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same, or of any other right on any further occasion. Each of the parties signing this Agreement regardless of the time, order or place of signing waives presentment, demand, protest, and notices of every kind, and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there is available to the Bank collateral for the Promissory Note, as modified, and to the additions or releases of any other parties or persons primarily or secondarily liable. Whenever possible the provisions of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. All rights and obligations arising hereunder shall be governed by and construed in accordance with the laws of the same state which governs the interpretation and enforcement of the Promissory Note.

From and after any event of default under this Agreement, the Promissory Note, or any related deed of trust, security agreement or loan agreement, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of North Carolina; and further that such rate shall apply after judgment. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate until such principal and interest have been paid in full. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

Unless otherwise required under a Loan Agreement or Forbearance Agreement, if applicable, and as long as any indebtedness evidenced by this Promissory Note, as modified by this Agreement remains outstanding or as long as Bank remains obligated to make advances, the undersigned shall furnish annually an updated financial statement in a form satisfactory to Bank, which, when delivered shall be the property of the Bank. Further, the undersigned agree to provide any and all documentation requested by the Bank in order to verify the identity of the undersigned in accordance with the USA Patriot Act.

(SIGNATURES ON FOLLOWING PAGE)

# BB&T

## NOTE MODIFICATION SIGNATURE PAGE

| | | | |
|---|---|---|---|
| Borrower | WATERFRONT GROUP NC, LLC | | |
| Account Number: | ~~00546~~ | Note Number | 00004 |
| Modification Amount: | $6,243,956.25 | Modification Date: | August 23, 2010 |

**Notice of Right to Copy of Appraisal:** If a 1-4 family residential dwelling is pledged as collateral for this Note Modification Agreement, you, the undersigned, have a right to a copy of the real estate appraisal report used in connection with your application for credit. You must forward your request to the Bank no later than 90 days after the date of this Note Modification Agreement. In your request letter, please provide your name, mailing address, appraised property address, the date of this Note Modification Agreement, and the account and note numbers shown on the front of this Note Modification Agreement.

**IN WITNESS WHEREOF,** the undersigned, on the day and year first written above, have caused this Note Modification Agreement to be executed under seal.

WATERFRONT GROUP NC, LLC

By: _William N. Adkins_ (SEAL)
WILLIAM N. ADKINS, Member Manager

LANDSTAR DEVELOPMENT, LLC

By: _William N. Adkins_ (SEAL)
WILLIAM N. ADKINS, Member Manager

ADKINS LAND GROUP, INC.

By: _William N. Adkins_ (SEAL)
WILLIAM N. ADKINS, President

_William N. Adkins_
WILLIAM N. ADKINS

_Mark R. Adkins_
MARK R. ADKINS

_Lavinia Adkins_
LAVINIA ADKINS

BRANCH BANKING AND TRUST COMPANY

ATTEST: _____   By: _____ (SEAL)
Sean Marsden, Assistant Vice President

[Notary pages follow]

10

**Acknowledgments**

STATE OF NORTH CAROLINA, )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Waterfront Group NC, LLC a North Carolina Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Waterfront Group NC, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

    Given under my hand and official seal this 23rd day of August, 2010.

            (SEAL)               Notary Public
                              My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA, )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Landstar Development, LLC a Tennessee Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Landstar Development, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

    Given under my hand and official seal this 23rd day of August, 2010.

            (SEAL)               Notary Public
                              My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA, )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be the President of Adkins Land Group, Inc. a Delaware Corporation, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized President of said Adkins Land Group, Inc. by signing the name of the Corporation by himself as President.

    Given under my hand and official seal this 23rd day of August, 2010.

            (SEAL)               Notary Public
                              My Commission Expires: 7/28/12

*ACCOUNT # / NOTE #*

STATE OF NORTH CAROLINA  )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared William N. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

    Given under my hand and official seal this 23rd day of August, 2010.

                    (SEAL)

Notary Public
My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA  )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Mark R. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

    Given under my hand and official seal this 23rd day of August, 2010.

                    (SEAL)

Notary Public
My Commission Expires: 7/28/12

STATE OF NORTH CAROLINA  )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Lavinia Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and she acknowledged that he executed the foregoing instrument for the purposes therein contained.

    Given under my hand and official seal this 23rd day of August, 2010.

                    (SEAL)

Notary Public
My Commission Expires: 7/28/12

*ACCOUNT # / NOTE #*

(12)

| | |
|---|---|
| **MAKER:** WATERFRONT GROUP NC, LLC and LANDSTAR DEVELOPMENT, LLC | ~~0070~~00546 |
| **ADDRESS:** 17505 W. CATAWBA AVE. STE. 350 | **Account Number** |
| CORNELIUS, NC 28031-8068 | 00005 |
| | **Note Number** |

# BB&T

## NOTE MODIFICATION AGREEMENT

| $1,800,000.00 | $1,800,000.00 | 03/12/2010 | 08/23/2010 |
|---|---|---|---|
| Modified Principal Amount | Original Principal Amount | Original Date | Modification Date |

This Note Modification Agreement (hereinafter "Agreement") is made and entered into this 23rd day of August, 2010 by and between Waterfront Group NC, LLC and Landstar Development, LLC, maker(s), co-maker(s), endorser(s), or any other obligor(s) on the Promissory Note (as defined below), hereinafter referred to jointly and severally as "Borrower", whether one or more; Branch Banking and Trust Company, a North Carolina banking corporation, hereinafter referred to as "Bank"; and Adkins Land Group, Inc., William N. Adkins, Mark R. Adkins, and Lavinia Adkins, owners other than Borrower (if any) of any property pledged to secure performance of Borrower's obligations to Bank, hereinafter referred to jointly and severally as Debtor(s)/Grantor(s).

Borrower has previously executed a Promissory Note payable to Bank (including all renewals, extensions and modifications thereof, collectively "Promissory Note"), such Promissory Note being more particularly identified by description of the original amount and date set forth above; and Borrower and Bank agree that such Promissory Note be modified only to the limited extent as is hereafter set forth; that all other terms, conditions, and covenants of such Promissory Note remain in full force and effect, and binding between Borrower and Bank; and Debtor(s)/Grantor(s), if different from Borrower, have agreed to the terms of this Agreement; NOW, THEREFORE, in mutual consideration of the premises, the sum of Ten Dollars ($10) and other good and valuable consideration, each to the other parties paid, the parties hereto agree that said Promissory Note is modified as hereinafter described:

☐  Borrower shall pay a prepayment fee as set forth in the Prepayment Fee Addendum attached hereto.

**INTEREST RATE, PRINCIPAL AND INTEREST PAYMENT TERM MODIFICATIONS (To the extent no change is made, existing terms continue. Sections not completed are deleted.)**

Interest shall accrue from the date hereof on the unpaid balance outstanding from time to time at the:

☐  Fixed rate of _____% per annum.
☐  Variable rate of the Bank's Prime Rate plus _____% per annum to be adjusted _____ as the Bank's Prime Rate changes.
☐  As of the Modification Date, any fixed, floating or average maximum rate and fixed minimum rate in effect by virtue of the Promissory Note(s) are hereby deleted. If checked here ☐, the interest rate will not exceed a(n) ☐ fixed ☐ average maximum rate of _____ or a ☐ floating maximum rate of the greater of _____% or the Bank's Prime Rate; and the interest rate will not decrease below a fixed minimum annual rate of _____%. If an average maximum rate is specified, a determination of any required reimbursement of interest by Bank will be made: ☐ when the Note is repaid in full by Borrower ☐ annually beginning on _____.
☐  _____.

**Principal and interest is payable as follows**

☒  Principal (plus any accrued interest not otherwise scheduled herein)   )is due in full at maturity on 11/15/2010
☐  Principal plus accrued interest

☐  Payable in consecutive _____ installments of ☐ Principal ☐ Principal and interest commencing on _____ and continued on the same day of each calendar period thereafter, in _____ equal payments of $_____, with one final payment of all remaining principal and accrued interest due on _____.
☐  ChoiceLine Payment Option: 2% of outstanding balance is payable monthly commencing on _____ and continuing on the same day of each calendar period thereafter, with one final payment of all remaining principal and accrued interest due on _____.
☒  Accrued interest is payable monthly commencing on 09/15/2010 and continuing on the same day of each calendar period thereafter, with one final payment of all remaining interest due on 11/15/2010.
☐  Bank reserves the right in its sole discretion to adjust the fixed payment due hereunder _____ on _____ and continuing on the same day of each calendar period thereafter, in order to maintain an amortization period of no more than _____ months from the date of this Note. Borrower understands the payment may increase if interest rates increase.
☐  Prior to an event of default, Borrower may borrow, repay, and reborrow pursuant to the terms of the Loan Agreement dated _____, between Borrower and Bank
☐  _____.

☐  Borrower hereby authorizes Bank to automatically draft from its demand deposit, or savings account(s) with Bank or other bank, any payment(s) due under this Note on the date(s) due. Borrower shall provide appropriate account number(s) for account(s) at Bank or other bank.

The following scheduled payment(s) is (are) deferred:

☐  $_____ principal        }
☐  $_____ interest         } Payments due on _____

is (are) hereby deferred. Payments will resume on _____ according to the schedule contained herein or to the existing schedule (if no other changes are made herein).

Borrower shall pay to Bank, or order, a late fee in the amount of four percent (4%) of any installment past due for fifteen (15) or more days. Where any installment payment is past due for fifteen (15) or more days, subsequent payments shall first be applied to the past due balance. In addition, the undersigned shall pay to Bank a returned payment fee if the undersigned or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Bank because of nonpayment due to non-sufficient funds.

In addition to Bank's right of set-off and other liens and security interests granted to Bank, Borrower hereby grants to Bank a security interest in all of its deposit accounts with and investment property held by Bank, which shall serve as collateral for the indebtedness and obligations evidenced by this Agreement.

The Promissory Note, as modified, and the performance of the terms of any agreement or instrument relating to, evidencing, or securing the Promissory Note shall be additionally secured by collateral hereinafter described, a new security instrument shall be executed by Borrower, and/or Debtor(s)/Grantor(s), and all other steps necessary to perfect or record the Bank's lien with priority acceptable to Bank shall be taken.

Deed(s) of Trust / N.C. Mortgage(s) granted in favor of Bank as beneficiary / mortgagee:

☐ dated _____ in the maximum principal amount of $_____ granted by _____

Security Agreement(s) conveying a security interest to Bank:

☒ dated August 23, 2010 given by Waterfront Group NC, LLC
☐ Securities Account Pledge and Security Agreement dated _____, executed by _____.
☐ Control Agreement(s) dated _____, covering   ☐ Deposit Account(s)  ☐ Investment Property
                                                ☐ Letter of Credit Rights  ☐ Electronic Chattel Paper
☐ Assignment of Certificate of Deposit, Security Agreement, and Power of Attorney (for Certificated Certificates of Deposit) dated _____, executed by _____.
☐ Pledge and Security Agreement for Publicly Traded Certificated Securities dated _____, executed by _____.
☐ Assignment of Life Insurance Policy as Collateral dated _____, executed by _____.
☒ Amendment to Forbearance Agreement dated August 23, 2010, executed by ☒ Borrowers, ☒ Guarantor(s), and ☒ Others.

This Agreement and the Promissory Note shall be construed in accordance with and governed by the laws of the State of North Carolina.

If the Agreement is signed by more than one person or entity, the Agreement shall be the joint and several obligation of all signors and the property and liability of each and all of them. It is expressly understood and agreed that this Agreement is a modification only and not a novation. The original obligation of Borrower as evidenced by the Promissory Note is not extinguished hereby. It is also understood and agreed that except for amendments contained herein said Promissory Note, and any other Loan Documents or Agreements evidencing securing or relating to the Promissory Note and all singular terms and conditions thereof, shall be and remain in full force and effect. This Agreement shall not release or affect the liability of any co-makers, obligors, endorsers or guarantors of said Promissory Note. Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to terms of this Agreement, waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank, including without limitation the Promissory Note. Bank expressly reserves all rights as to any party with right of recourse on the aforesaid Promissory Note.

In the event periodic accruals of interest shall exceed any periodic fixed payment amount described above, the fixed payment amount shall be immediately increased, or supplemental interest payments required on the same periodic basis as specified above (increased fixed payments or supplemental payments to be determined in the Bank's sole discretion), in such amounts and at such times as shall be necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental payments shall remain in effect for so long as any interest accruals shall exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in any variable interest rate based on an index such as the Bank's Prime Rate; provided that unless elected otherwise above, the fixed payment amount shall not be reduced below the original fixed payment amount. However, Bank shall have the right, in its sole discretion, to lower the fixed payment amount below the original payment amount. Notwithstanding any other provision contained in this Agreement, in no event shall the provisions of this paragraph be applicable to any Promissory Note which requires disclosures pursuant to the Consumer Protection Act (Truth-In-Lending Act), 15 USC § 1601, et seq., as implemented by Regulation Z.

Borrower agrees that the only interest charge is the interest actually stated in this Agreement, and that any loan or origination fee shall be deemed charges rather than interest, which charges are fully earned and non-refundable. It is further agreed that any late charges are not a charge for the use of money but are imposed to compensate Bank for some of the administrative services, costs and losses associated with any delinquency or default under this Agreement, and said charges shall be fully earned and non-refundable when accrued. All other charges imposed by Bank upon Borrower in connection with this Agreement and the loan including, without limitation, any commitment fees, loan fees, facility fees, origination fees, discount points, default and late charges, prepayment fees, statutory attorneys' fees and reimbursements for costs and expenses paid by Bank to third parties or for damages incurred by Bank are and shall be deemed to be charges made to compensate Bank for underwriting and administrative services and costs, other services, and costs or losses incurred and to be incurred by Bank in connection with this Agreement and the loan shall under no circumstances be deemed to be charges for the use of money. All such charges shall be fully earned and non-refundable when due.

The Bank may, at its option, charge any fees for the modification, renewal, extension, or amendment of any of the terms of the Promissory Note(s) permitted by N.C.G.S. 24-1.1.

If the words "Prime Rate", "Bank Prime Rate", "BB&T Prime Rate", "Bank's Prime Rate" or "BB&T's Prime Rate" are used in this Agreement, they shall refer to the rate announced by the Bank from time to time and adopted as its Prime Rate at its executive offices in Winston-Salem, North Carolina, and they do not constitute a representation of the Bank's lowest or a preferred rate. The Bank makes loans at interest rates both above and below the Prime Rate and uses indexes other than the Prime Rate.

Unless otherwise provided herein, it is expressly understood and agreed by and between Borrower, Debtor(s)/Grantor(s), and Bank that any and all collateral (including but not limited to real property, personal property, fixtures, inventory, accounts, instruments, general intangibles, documents, chattel paper, and equipment) given as security to insure faithful performance by Borrower(s) and any other third party of any and all obligations to Bank, however created, whether now existing or hereafter arising, shall remain as security for the Promissory Note as modified hereby.



It is understood and agreed that if Bank has released collateral herein, it shall not be required or obligated to take any further steps to release said collateral from any lien or security interest unless Bank determines, in its sole discretion, that it may do so without consequence to its secured position and relative priority in other collateral; and unless Borrower bears the reasonable cost of such action. No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Bank, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same, or of any other right on any further occasion. Each of the parties signing this Agreement regardless of the time, order or place of signing waives presentment, demand, protest, and notices of every kind, and assents to any one or more extensions or postponements of the time of payment or any other indulgences, to any substitutions, exchanges or releases of collateral if at any time there is available to the Bank collateral for the Promissory Note, as modified, and to the additions or releases of any other parties or persons primarily or secondarily liable. Whenever possible the provisions of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement prohibited by or invalid under such law, such provisions shall be ineffective to the extent of any such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. All rights and obligations arising hereunder shall be governed by and construed in accordance with the laws of the same state which governs the interpretation and enforcement of the Promissory Note.

From and after any event of default under this Agreement, the Promissory Note, or any related deed of trust, security agreement or loan agreement, interest shall accrue on the sum of the principal balance and accrued interest then outstanding at the variable rate equal to the Bank's Prime Rate plus 5% per annum ("Default Rate"), provided that such rate shall not exceed at any time the highest rate of interest permitted by the laws of the State of North Carolina; and further that such rate shall apply after judgment. In the event of any default, the then remaining unpaid principal amount and accrued but unpaid interest then outstanding shall bear interest at the Default Rate until such principal and interest have been paid in full. Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. Borrower agrees that tender of its check or other payment instrument so marked will not satisfy or discharge its obligation under this Note, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.

Unless otherwise required under a Loan Agreement or Forbearance Agreement, if applicable, and as long as any indebtedness evidenced by this Promissory Note, as modified by this Agreement remains outstanding or as long as Bank remains obligated to make advances, the undersigned shall furnish annually an updated financial statement in a form satisfactory to Bank, which, when delivered shall be the property of the Bank. Further, the undersigned agree to provide any and all documentation requested by the Bank in order to verify the identity of the undersigned in accordance with the USA Patriot Act.

## (SIGNATURES ON FOLLOWING PAGE)

# BB&T

### NOTE MODIFICATION SIGNATURE PAGE

| | |
|---|---|
| Borrower | WATERFRONT GROUP NC, LLC and LANDSTAR DEVELOPMENT, LLC |

| | | | |
|---|---|---|---|
| Account Number: | ~~~~0546 | Note Number | 00005 |
| Modification Amount: | $1,800,000.00 | Modification Date: | August 23, 2010 |

**Notice of Right to Copy of Appraisal:** If a 1-4 family residential dwelling is pledged as collateral for this Note Modification Agreement, you, the undersigned, have a right to a copy of the real estate appraisal report used in connection with your application for credit. You must forward your request to the Bank no later than 90 days after the date of this Note Modification Agreement. In your request letter, please provide your name, mailing address, appraised property address, the date of this Note Modification Agreement, and the account and note numbers shown on the front of this Note Modification Agreement.

**IN WITNESS WHEREOF,** the undersigned, on the day and year first written above, have caused this Note Modification Agreement to be executed under seal.

WATERFRONT GROUP NC, LLC

By: _____ (SEAL)
WILLIAM N. ADKINS, Member Manager

LANDSTAR DEVELOPMENT, LLC

By: _____ (SEAL)
WILLIAM N. ADKINS, Member Manager

ADKINS LAND GROUP, INC.

By: _____ (SEAL)
WILLIAM N. ADKINS, President

_____
WILLIAM N. ADKINS

_____
MARK R. ADKINS

_____
LAVINIA ADKINS

BRANCH BANKING AND TRUST COMPANY

ATTEST: _____        By: _____ (SEAL)
Sean Marsden, Assistant Vice President

[Notary pages follow]



<u>Acknowledgments</u>

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Waterfront Group NC, LLC a North Carolina Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Waterfront Group NC, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

    Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public
My Commission Expires: _7/28/12_

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Landstar Development, LLC a Tennessee Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Landstar Development, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

    Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public
My Commission Expires: _7/28/12_

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be the President of Adkins Land Group, Inc. a Delaware Corporation, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized President of said Adkins Land Group, Inc. by signing the name of the Corporation by himself as President.

    Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public
My Commission Expires: _7/28/12_

*ACCOUNT # / NOTE #*

STATE OF NORTH CAROLINA  )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared William N. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

    Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

                                    Notary Public
                                    My Commission Expires:    7/28/12

STATE OF NORTH CAROLINA  )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Mark R. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

    Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

                                      Notary Public
                                    My Commission Expires:    7/28/12

STATE OF NORTH CAROLINA  )
CITY/COUNTY OF Mecklenburg ) to-wit:

    I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Lavinia Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and she acknowledged that he executed the foregoing instrument for the purposes therein contained.

    Given under my hand and official seal this 23rd day of August, 2010.

                                      Notary Public
                                    My Commission Expires:    7/28/12

*ACCOUNT # / NOTE #*

City: Cornelius, NC

## BB&T SECURITY AGREEMENT

This Security Agreement ("Security Agreement") is made August 23, 2010, between Waterfront Group NC, LLC (hereinafter "Debtor"), and Branch Banking and Trust Company, a North Carolina banking corporation (hereinafter "Secured Party").

This Security Agreement is entered into in connection with (check applicable items):

☒  , (i)  an Amendment to Forbearance Agreement ("Amendment") of even date herewith, executed by Debtor, Secured Party and others.

☐  (iii)  a control agreement covering the Debtor's, Obligor's, or any Guarantor's Deposit Account(s), Investment Property, Letter-of-Credit Rights, or Electronic Chattel Paper dated on or about the same date as this Security Agreement executed by the Debtor, the Obligor, and any such Guarantor;

☐  (iv)  the sale by Debtor and purchase by Secured Party of Accounts, Chattel Paper, Payment Intangibles and/or Promissory Notes; and/or

☒  (v)  promissory notes and/or guarantee agreements from Debtor, Adkins Land Group, Inc. and/or Landstar Development, LLC and others (individually, "Obligor" and collectively, "Obligors") as set forth in Schedule I attached hereto to this Security Agreement, which Schedule I  is incorporated herein by reference.

Secured Party and Debtor agree as follows:

**I.    DEFINITIONS.**

1.1    **Collateral.**  Unless specific items of personal property are described below, the Collateral shall consist of all now owned and hereafter acquired and wherever located personal property of Debtor identified below, each capitalized term as defined in Article 9 of the North Carolina Uniform Commercial Code ("UCC")(check applicable items):

☐ (i)    Accounts, including all contract rights and health-care-insurance receivables;

☐ (ii)   Inventory, including all returned inventory;

    ☐ (ii-a) The Inventory specifically described as follows: _____.

☐ (iii)  Equipment, including all Accessions thereto, and all manufacturers' warranties, parts and tools therefore;

    ☐ (iii-a) The Equipment, including all Accessions thereto, all manufacturer's warranties therefore, and all parts and tools therefore, specifically described as follows: _____.

☐ (iv)   Investment Property, including the following certificated securities and/or securities account(s) specifically described as follows: _____.

☐ (v)    Instruments, including all promissory notes and certificates of deposit;

☒ (vi)   Deposit Accounts with Secured Party specifically described as follows: BB&T Deposit Account No. ⬛⬛⬛⬛⬛2977 and BB&T Deposit Account No. ⬛⬛⬛⬛⬛2985;

    ☐ (vi-a) The Deposit Accounts with other financial institutions specifically described as follows (list financial institution and account number(s) _____.)

☐ (vii)  Chattel Paper (whether tangible or electronic);

    ☐ (vii-a) The Chattel Paper specifically described as follows: _____

☐ (viii) Goods, including all Fixtures and timber to be cut, located or situated on the real property specifically described in Exhibit A hereto.

☐ (ix)   Farm Products, including all crops grown, growing or to be grown, livestock (born and unborn), supplies used or produced in a farming operation, and products of crops and livestock;

    ☐ (ix-a) The Farm Products specifically described as follows: _____.

☐ (x)    As-Extracted Collateral from the real property described in Exhibit A hereto.

☐ (xi)   The Letter-of-Credit Rights under the following letter(s) of credit (list issuer, number and amount): _____.

☐ (xii)  Documents of Title, including all warehouse receipts and bills of lading specifically described as follows: _____.

☐ (xiii) Commercial Tort Claim(s) more specifically described as follows: _____

☐ (xiv)  Money, including currency and/or rare coins delivered to and in possession of the Secured Party specifically described as follows: _____

☐ (xv)   Software specifically described as follows: _____

☐ (xvi)  Manufactured Home(s):

| Model | Year | Serial Number 1 | Doublewide Serial Number 2 |
|---|---|---|---|
| 1. | | | |
| 2. | | | |

☐ (xvii) Vehicles, including recreational vehicles and watercraft described below:

| New/Used | Year/Make | Model/Body Type | VIN Number/ VIN Number/Serial Number |
|---|---|---|---|
| 1 | | | |
| 2. | | | |

*ACCOUNT # / NOTE #*

| 4. | | | | |
|----|---|---|---|---|
| 5. | | | | |

☐ (xviii) General Intangibles, including without limitation all Payment Intangibles, copyrights, trademarks, patents, tradenames, tax refunds, company records (paper and electronic), rights under equipment leases, warranties, software licenses, and the following, if any: _____

☒ (xix)  Supporting Obligations;

☒ (xx) to the extent not listed above as original collateral, all proceeds (cash and non-cash) and products of the foregoing.

1.2     **Obligations.** This Security Agreement secures the following (collectively, the "Obligations"):

(i)   Debtor's obligations under this Security Agreement and Obligors' obligations under the notes or other documents identified on Schedule I attached hereto and incorporated herein by reference, together with any other Note or other Document now or hereafter evidencing any debt whatsoever incurred by Debtor and/or other Obligor and payable to Beneficiary, the terms of which are incorporated herein by reference (all of the aforementioned notes or other documents are herein referred to collectively as the "Notes or other Documents"). Any and all references herein to the obligations of Obligors shall be deemed to include each of the Obligors individually as well as the Obligors collectively;

(ii)  all of Obligors' present and future indebtedness and obligations to Secured Party including without limitation reimbursement of drafts or drawings paid by Secured Party on any Commercial or Standby Letter of Credit issued on the account of the Debtor or other Obligor; and all indebtedness and obligations of Debtor or other Obligor to Secured Party (or an affiliate of Secured Party) under any interest rate swap transactions, interest rate cap and/or floor transactions, interest rate collar transactions, swap agreements (as defined in 11 U.S.C. § 101) or other similar transactions or agreements, including without limitation any ISDA Master Agreement executed by Debtor or other Obligor and all Schedules and Confirmations entered into in connection therewith, hereinafter collectively referred to as a Hedge Agreement.

(iii) the repayment of (a) any amounts that Secured Party may advance or spend for the maintenance or preservation of the Collateral, and (b) any other expenditures that Secured Party may make under the provisions of this Security Agreement or for the benefit of Debtor or other Obligor;

(iv)  all amounts owed under any modifications, renewals, extensions or substitutions of any of the foregoing obligations;

(v)   all Default Costs, as defined in Paragraph VIII of this Security Agreement; and

(vi)  any of the foregoing that may arise after the filing of a petition by or against Debtor or any other Obligor under the Bankruptcy Code, even if the obligations do not accrue because of the automatic stay under Bankruptcy Code § 362 or otherwise.

1.3     UCC. Any term used in the UCC and not otherwise defined in this Security Agreement has the meaning given to the term in the UCC.

1.4     Obligors. For purposes of this Security Agreement, "Obligor" or "Obligors" shall include any entity or individual listed on Schedule I attached hereto that is indebted or obligated to Secured Party, including without limitation Debtor .

II.    **GRANT OF SECURITY INTEREST.**

1.   Debtor grants a security interest in the Collateral to Secured Party to secure the payment and performance of the Obligations. Further, Debtor has granted this security interest in the form of hypothecated security in that it is given in part to secure the debt of another, to wit: the indebtedness evidenced by the Notes or other Documents, which are made and delivered by Obligors to and for the benefit of Secured Party. Debtor recognizes that Debtor will derive a material and direct benefit from the loans evidenced by the Notes or other Documents from Obligors, and in accordance therewith, Debtor agrees that such interest and benefit are sufficient consideration to support this Security Agreement. Notwithstanding any contrary provision in this Security Agreement, in the event of a default by any Obligor under such Notes or other Documents, Debtor expressly acknowledges, covenants, and agrees that, in the event of default under the Notes or other Documents, Debtor shall likewise be deemed an event of default under the terms of this Security Agreement giving rise to all rights and remedies as set forth in this Security Agreement for default. Debtor expressly agrees that, upon such default, Secured Party may elect to enforce any rights and remedies which it may have under this Security Agreement. The foregoing are made by Debtor as an inducement to Secured Party to enter into a Loan Agreement and the loan transactions secured hereby.  Debtor acknowledges that some of the Collateral may have been previously pledged to Bank and to the extent that such previously-pledged Collateral is being pledged herein, this Security Agreement supersedes and takes priority over any previous pledge or security agreement with respect to such Collateral.

III.   **PERFECTION OF SECURITY INTERESTS.**

3.1     Filing of Security Interests.

(i)   Debtor authorizes Secured Party to execute on the Debtor's behalf and file any financing statement (the "Financing Statement") describing the Collateral in any location deemed necessary and appropriate by Secured Party.

(ii)  Debtor authorizes Secured Party to file a Financing Statement describing any agricultural liens or other statutory liens held by Secured Party.

(iii) Secured Party shall receive prior to the closing an official report from the Secretary of State of each Place of Business and the Debtor State, each as defined below, collectively (the "Filing Reports") indicating that Secured Party's security interest is prior to all other security interests or other interests reflected in the report.

3.2     Possession.

(i)   Debtor shall have possession of the Collateral, except where expressly otherwise provided in this Security Agreement or where Secured Party chooses to perfect its security interest by possession in addition to the filing of a Financing Statement.

(ii)  Where Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party.

*ACCOUNT # / NOTE #*

**3.3**    **Control Agreements.** Debtor will cooperate with Secured Party in obtaining a control agreement in form and substance satisfactory to Secured Party with respect to Collateral consisting of (check appropriate items):

☐    Deposit Accounts (for deposit accounts at other financial institutions);

☐    Investment Property (for securities accounts, mutual funds and other uncertificated securities);

☐    Letter-of-credit rights; and/or

☐    Electronic chattel paper.

**3.4**    **Marking of Chattel Paper.** If Chattel Paper is part of the Collateral, Debtor will not create any Chattel Paper without placing a legend on the Chattel Paper acceptable to Secured Party indicating that Secured Party has a security interest in the Chattel Paper.

**IV.    POST-CLOSING COVENANTS AND RIGHTS CONCERNING THE COLLATERAL.**

**4.1**    **Inspection.** The parties to this Security Agreement may inspect any Collateral in the other party's possession, at any time upon reasonable notice.

**4.2**    **Personal Property.** Except for items specifically identified by Debtor and Secured Party as Fixtures, the Collateral shall remain personal property at all times, and Debtor shall not affix any of the Collateral to any real property in any manner which would change its nature from that of personal property to real property or to a fixture.

**4.3**    **Secured Party's Collection Rights.** Secured Party shall have the right at any time to enforce Debtor's rights against any account debtors and obligors.

**4.4**    **Limitations on Obligations Concerning Maintenance of Collateral.**

(i)    **Risk of Loss.** Debtor has the risk of loss of the Collateral.

(ii)    **No Collection Obligation.** Secured Party has no duty to collect any income accruing on the Collateral or to preserve any rights relating to the Collateral.

**4.5**    **No Disposition of Collateral.** Secured Party does not authorize, and Debtor agrees not to:

(i)    make any sales or leases of any of the Collateral other than in the ordinary course of business;

(ii)    license any of the Collateral; or

(iii)    grant any other security interest in any of the Collateral.

**4.6**    **Purchase Money Security Interests.** To the extent Debtor uses the Loan to purchase Collateral, Debtor's repayment of the Loan shall apply on a "first-in-first-out" basis so that the portion of the Loan used to purchase a particular item of Collateral shall be paid in the chronological order the Debtor purchased the Collateral.

**4.7**    **Insurance.** Debtor shall obtain and keep in force such insurance on the Collateral as is normal and customary in the Debtor's business or as the Secured Party may require, all in such amounts, under such forms of policies, upon such terms, for such periods and written by such insurance companies as the Secured Party may approve. All policies of insurance will contain the long-form Lender's Loss Payable clause in favor of the Secured Party, and the Debtor shall deliver the policies or complete copies thereof to the Secured Party. Such policies shall be noncancellable except upon thirty (30) days' prior written notice to the Secured Party. The proceeds of all such insurance, if any loss should occur, may be applied by the Secured Party to the payment of the Obligations or to the replacement of any of the Collateral damaged or destroyed, as the Secured Party may elect or direct in Secured Party's sole discretion. The Debtor hereby appoints (which appointment constitutes a power coupled with an interest and is irrevocable as long as any of the Obligations remain outstanding) Secured Party as Debtor's lawful attorney-in-fact with full authority to make, adjust, settle claims under and/or cancel such insurance and to endorse the Debtor's name on any instruments or drafts issued by or upon any insurance companies.

**V.    DEBTOR'S REPRESENTATIONS AND WARRANTIES.**

Debtor represents and warrants to Secured Party:

**5.1**    **Title to and transfer of Collateral.** Debtor has rights in or the power to transfer the Collateral and Debtor's title to the Collateral is free of all adverse claims, liens, security interests and restrictions on transfer or pledge except as created by this Security Agreement.

**5.2**    **Location of Collateral.** All collateral consisting of goods (equipment, inventory, fixtures, crops, unborn young of animals, timber to be cut, manufactured homes; and other tangible, movable personal property) is located solely in the following States (the "Collateral States"): North Carolina

**5.3**    **Location, State of Incorporation and Name of Debtor.** Debtor's:

(i)    chief executive office (if Debtor has more than one place of business), place of business (if Debtor has one place of business), or principal residence (if Debtor is an individual), is located in the following State and address (the "Place of Business"): 17505 West Catawba Avenue, Suite 350, Cornelius NC 28031.

(ii)    state of incorporation or organization is North Carolina (the "Debtor State");

(iii)    exact legal name is as set forth in the first paragraph of this Security Agreement.

**5.4**    **Business or Agricultural Purpose.** None of the Obligations is a Consumer Transaction, as defined in the UCC and none of the Collateral has been or will be purchased or held primarily for personal, family or household purposes.

**VI.    DEBTOR'S COVENANTS.**

Until the Obligations are paid in full, Debtor agrees that Debtor will:

**6.1**    preserve its legal existence and not, in one transaction or a series of related transactions, merge into or consolidate with any other
*ACCOUNT # / NOTE #*

entity, or sell all or substantially all of Debtor assets;

6.2    not change the Debtor State of Debtor registered organization;

6.3    not change Debtor's registered name without providing Secured Party with 30 days' prior written notice; and

6.4    not change the state of Debtor's Place of Business or, if Debtor is an individual, change his state of residence without providing Secured Party with 30 days' prior written notice.

**VII.    EVENTS OF DEFAULT.**

The occurrence of any of the following shall, at the option of Secured Party, be an Event of Default:

7.1    Any default or Event of Default by Obligor or Debtor under the Notes or other Documents related to any of the other Obligations;

7.2    Debtor's failure to comply with any of the provisions of, or the incorrectness of any representation or warranty contained in, this Security Agreement, the Notes or other Documents;

7.3    Transfer or disposition of any of the Collateral, except as expressly permitted by this Security Agreement;

7.4    Attachment, execution or levy on any of the Collateral;

7.5    Debtor voluntarily or involuntarily becoming subject to any proceeding under (a) the Bankruptcy Code or (b) any similar remedy under state statutory or common law;

7.6    Debtor shall fail to comply with, or become subject to any administrative or judicial proceeding under any federal, state or local (a) hazardous waste or environmental law, (b) asset forfeiture or similar law which can result in the forfeiture of property, or (c) other law, where noncompliance may have any significant effect on the Collateral; or

7.7    Secured Party shall receive at any time following the closing a UCC filing report indicating that Secured Party's security interest is not prior to all other security interests or other interests reflected in the report.

**VIII.    DEFAULT COSTS.**

8.1    Should an Event of Default occur, Debtor will pay to Secured Party all costs incurred by the Secured Party for the purpose of enforcing Debtor's rights hereunder, including:

(i)    costs of foreclosure;

(ii)    costs of obtaining money damages; and

(iii)    a reasonable fee for the service of attorneys employed by Secured Party for any purpose related to this Security Agreement or the Obligations, including without limitation consultation, drafting documents, sending notices or instituting, prosecuting or defending litigation or arbitration.

**IX.    REMEDIES UPON DEFAULT.**

9.1    General.  Upon any Event of Default, Secured Party may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce or satisfy any Obligations then owing, whether by acceleration or otherwise.

9.2.    Concurrent Remedies.  Upon any Event of Default, Secured Party shall have the right to pursue any of the following remedies separately, successively or concurrently:

(i)    File suit and obtain judgment and, in conjunction with any action, Secured Party may seek any ancillary remedies provided by law or at equity, including levy of attachment and garnishment.

(ii)    Take possession of any Collateral if not already in its possession without demand and without legal process. Upon Secured Party's demand, Debtor will assemble and make the Collateral available to Secured Party as Secured Party directs. Debtor grants to Secured Party the right, for this purpose, to enter into or on any premises where Collateral may be located.

(iii)    Without taking possession, sell, lease or otherwise dispose of the Collateral at public or private sale in accordance with the UCC.

**X.    FORECLOSURE PROCEDURES.**

10.1    No Waiver.  No delay or omission by Secured Party to exercise any right or remedy accruing upon any Event of Default shall (a) impair any right or remedy, (b) waive any default or operate as an acquiescence to the Event of Default, or (c) affect any subsequent default of the same or of a different nature.

10.2    Notices.  Secured Party shall give Debtor such notice of any private or public sale as may be required by the UCC.

10.3    Condition of Collateral.  Secured Party has no obligation to repair, clean-up or otherwise prepare the Collateral for sale.

10.4    No Obligation to Pursue Others.  Secured Party has no obligation to attempt to satisfy the Obligations by collecting them from any other person liable for them and Secured Party may release, modify or waive any collateral provided by any other person to secure any of the Obligations, all without affecting Secured Party's rights against Debtor. Debtor waives any right it may have to require Secured Party to pursue any third person for any of the Obligations.

10.5    Compliance With Other Laws.  Secured Party may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

10.6    Warranties.  Secured Party may sell the Collateral without giving any warranties as to the Collateral and may specifically disclaim any warranties of title or the like.  This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

10.7    Sales on Credit.  If Secured Party sells any of the Collateral upon credit, Debtor will be credited only with payments actually

*ACCOUNT # / NOTE #*

(22)

made by the purchaser, received by Secured Party and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor shall be credited with the proceeds of the sale as and when received, less expenses.

10.8    **Purchases by Secured Party.** In the event Secured Party purchases any of the Collateral being sold, Secured Party may pay for the Collateral by crediting some or all of the Obligations of the Debtor.

10.9    **No Marshalling.** Secured Party has no obligation to marshal any assets in favor of Debtor, or against or in payment of:

(i)    the Notes or other Documents,

(ii)    any of the other Obligations, or

(iii)    any other obligation owed to Secured Party, Obligor or any other person.

XI.    **MISCELLANEOUS.**

11.1    Assignment.

(i)    **Binds Assignees.** This Security Agreement shall bind and shall inure to the benefit of the successors and assigns of Secured Party, and shall bind all heirs, personal representatives, executors, administrators, successors and permitted assigns of Debtor.

(ii)    **No Assignments by Debtor.** Secured Party does not consent to any assignment by Debtor except as expressly provided in this Security Agreement.

(iii)    **Secured Party Assignments.** Secured Party may assign Secured Party's rights and interests under this Security Agreement. If an assignment is made, Debtor shall render performance under this Security Agreement to the assignee. Debtor waives and will not assert against any assignee any claims, defenses or set-offs which Debtor could assert against Secured Party except defenses which cannot be waived.

11.2    **Severability.** Should any provision of this Security Agreement be found to be void, invalid or unenforceable by a court or panel of arbitrators of competent jurisdiction, that finding shall only affect the provisions found to be void, invalid or unenforceable and shall not affect the remaining provisions of this Security Agreement.

11.3    **Notices.** Any notices required by this Security Agreement shall be deemed to be delivered when a record has been (a) deposited in any United States postal box if postage is prepaid, and the notice properly addressed to the intended recipient, (b) received by telecopy, (c) received through the Internet, and (d) when personally delivered.

11.4    **Headings.** Section headings used in this Security Agreement are for convenience only. They are not a part of this Security Agreement and shall not be used in construing it.

11.5    **Governing Law.** This Security Agreement is being executed and delivered and is intended to be performed in the State of North Carolina and shall be construed and enforced in accordance with the laws of the State of North Carolina, except to the extent that the UCC provides for the application of the law of the Debtor State.

11.6    Rules of Construction.

(i)    No reference to "proceeds" in this Security Agreement authorizes any sale, transfer, or other disposition of the Collateral by the Debtor except in the ordinary course of business.

(ii)    "Includes" and "including" are not limiting.

(iii)    "Or" is not exclusive.

(iv)    "All" includes "any" and "any" includes "all."

11.7    Integration and Modifications.

(i)    This Security Agreement is the entire agreement of the Debtor and Secured Party concerning its subject matter.

(ii)    Any modification to this Security Agreement must be made in writing and signed by the party adversely affected.

11.8    **Waiver.** Any party to this Security Agreement may waive the enforcement of any provision to the extent the provision is for its benefit.

11.9    **Further Assurances.** Debtor agrees to execute any further documents, and to take any further actions, reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

[Signatures on following page]

*ACCOUNT # / NOTE #*

1476 NC NB



## SIGNATURE PAGE

The parties have signed this Security Agreement under seal as of the day and year first above written.

WATERFRONT GROUP NC, LLC

By: _____ (SEAL)
WILLIAM N. ADKINS, Member Manager

BRANCH BANKING AND TRUST COMPANY

ATTEST: _____

By: _____ (SEAL)
Sean Marsden, Assistant Vice President

### Acknowledgments

STATE OF NORTH CAROLINA )
CITY/COUNTY OF Mecklenburg ) to-wit:

I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Waterfront Group NC, LLC a North Carolina Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Waterfront Group NC, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

_____ (SEAL)
Notary Public
My Commission Expires: 7/28/12

ANN MARIE WILSON
NOTARY PUBLIC
MECKLENBURG COUNTY, NC

*ACCOUNT # / NOTE #*

1476 NC NB

Page 6 of 7

24

Schedule I
To BB&T Security Agreement

All promissory notes or other debt obligations listed herein are made in favor of Secured Party as Payee and are secured by this Security Agreement.

(1)    Promissory Note from Waterfront Group NC, LLC dated March 21, 2008, including all amendments and modifications thereto, in an original principal amount of $9,000,000.00;

(2)    Promissory Note from Adkins Land Group, Inc. dated February 14, 2007, including all amendments and modifications thereto, in an original principal amount of $3,000,000.00;

(3)    Promissory Note from Waterfront Group NC, LLC and Landstar Development, LLC dated March 12, 2010, including all amendments and modifications thereto, in an original principal amount of $1,800,000.00;

(4)    Guaranty Agreement from Waterfront Group NC, LLC dated March 12, 2010 of all debts or obligations of Adkins Land Group, Inc.;

(4)    Guaranty Agreement from Waterfront Group NC, LLC dated March 12, 2010 of all debts or obligations of Landstar Development, LLC;

(5)    Any other note or other document now or hereafter evidencing any debt or obligation whatsoever incurred by any Obligor, and payable to Secured Party.

# AMENDMENT

## TO FORBEARANCE AGREEMENT

This Amendment to Forbearance Agreement (the "Amendment") is made and entered into this 23rd day of August, 2010 by and between Branch Banking and Trust Company, a North Carolina Banking corporation (the "Lender"), and:

Waterfront Group NC, LLC, a North Carolina limited liability company, having its chief executive office in Cornelius, NC; Adkins Land Group, Inc., a Delaware corporation, having its chief executive office in Cornelius, NC; Landstar Development, LLC, a Tennessee limited liability company, having its chief executive office in Cornelius, NC; Adkins Aviation, LLC, a Delaware limited liability company, having its chief executive office in Cornelius, NC; Waterfront Group, Inc., a Virginia corporation, having its chief executive office in Cornelius, NC; Waterfront Group, LLC, a Kentucky limited liability company, having its chief executive office in Cornelius, NC; Swiper Lot Clearing, Inc., a North Carolina corporation, having its chief executive office in Cornelius, NC; Waterfront Group Florida, LLC, a Florida limited liability company, having its chief executive office in Jacksonville, FL; NC Mountain Investments, LLC, a North Carolina limited liability company, having its chief executive office in Cornelius, NC; William N. Adkins and Mark R. Adkins, individual(s) having principal residences in the State of North Carolina (the foregoing entities and individuals are referred to collectively herein as "Obligors").

Lavinia Adkins is made a party to this Amendment strictly for the purposes stated herein.

WHEREAS, Lender and Obligors executed that forbearance agreement dated the 12th day of March, 2010 (the "Agreement");

WHEREAS, the Obligors have requested that Lender continue to forbear from the exercise of certain rights and remedies otherwise available to the Lender at law, in equity, or by agreement as a result of the Events of Default (as that term is defined in the Agreement) without the Lender waiving any of such rights;

NOW, THEREFORE, inconsideration of the mutual promises and covenants contained herein, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Section II.D.2. of the Agreement shall be amended to read as follows: "Obligors shall pay to Lender a forbearance fee of Fifty Thousand and 00/100 Dollars ($50,000.00), with Twenty-Five Thousand and 00/100 Dollars ($25,000.00) due on or before August

26

23, 2010, and Twenty-Five Thousand and 00/100 Dollars ($25,000.00) due on or before October 7, 2010."

2. Section III.A.(iii) of the Agreement shall be amended to read as follows: "November 15, 2010, the period of this Agreement (the period beginning on the date hereof and terminating on the earlier of such dates being hereafter referred to as the "Forbearance Period")."

3. Section III.B.5. of the Agreement shall be amended to read as follows: "The New Loan shall mature on November 15, 2010, when the entire unpaid principal balance then outstanding plus accrued interest thereon shall be paid in full."

4. Section A.01.(c) of Schedule "A" to the Agreement shall be amended to read as follows: " 'Completion Date' shall mean the date upon which the Lender has received evidence satisfactory to it that the Improvements have been completed in accordance with the Construction Documents. Borrowers hereby agree that the Completion Date will occur not later than the earlier to occur of November 15, 2010 or the date for completion set forth in the Construction Documents."

5. Simultaneously with the execution of this Amendment, Obligors shall bring all interest current on the Waterfront Group NC, LLC Note, the Adkins Land Group, Inc. Note, and the New Note (as those terms are defined in the Agreement);

6. Simultaneously with the execution of this Amendment, Waterfront Group NC, LLC shall execute a Security Agreement on that deposit account No. 0002977 and on that deposit account No. 2985 (collectively, the "Deposit Accounts") to Lender in a form acceptable to the Lender at its sole discretion to secure the payment of the Waterfront Group NC, LLC Note, the Adkins Land Group, Inc. Note, and the New Note;

7. Note Modification Agreements:
   a. Simultaneously with the execution of this Amendment, Waterfront Group NC, LLC; Landstar Development, LLC; Adkins Land Group, Inc.; William N. Adkins; Lavinia Adkins; and Mark R. Adkins shall execute a Note Modification Agreement to make certain modifications to the Waterfront Group NC, LLC Note including without limitation causing said Waterfront Group NC, LLC Note to mature on November 15, 2010 and to be secured by the Deposit Accounts;
   b. Simultaneously with the execution of this Amendment, Adkins Land Group, Inc.; Landstar Development, LLC; Waterfront Group NC, LLC; William N. Adkins; Lavinia Adkins; and Mark R. Adkins shall execute a Note Modification Agreement to make certain modifications to the Adkins Land Group, Inc. Note including without limitation causing said Adkins Land Group, Inc. Note to mature on November 15, 2010 and to be secured by the Deposit Accounts.
   c. Simultaneously with the execution of this Amendment, Waterfront Group NC, LLC; Landstar Development, LLC; Adkins Land Group, Inc.; William N.

Adkins; Lavinia Adkins; and Mark R. Adkins shall execute a Note Modification Agreement to make certain modifications to the New Note including without limitation causing said New Note to mature on November 15, 2010 and to be secured by the Deposit Accounts.

Except as expressly modified herein, the Agreement and all other documents executed with respect to the Current Loans and/or the New Loan (as those terms are defined in the Agreement) shall remain in full force and effect, and shall not be in any other way modified or amended as a result of the execution and delivery of this Amendment.

This Amendment may be executed by one or more parties on any number of separate counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument.

IN WITNESS WHEREOF, Lender, Obligors, and Lavinia Adkins have caused this Amendment to be duly executed under seal all as of the date first above written.

ADKINS LAND GROUP, INC.

By: _____ (SEAL)
WILLIAM N. ADKINS, President

SWIPER LOT CLEARING, INC.

By: _____ (SEAL)
WILLIAM N. ADKINS, President

WATERFRONT GROUP, INC.

By: _____ (SEAL)
WILLIAM N. ADKINS, President

WATERFRONT GROUP NC, LLC
By: _____ (SEAL)
WILLIAM N. ADKINS, Member Manager

Page 3 of 10

28

LANDSTAR DEVELOPMENT, LLC


By: _____ (SEAL)
    WILLIAM N. ADKINS, Member Manager


ADKINS AVIATION, LLC


By: _____ (SEAL)
    WILLIAM N. ADKINS, Member Manager


WATERFRONT GROUP, LLC


By: _____ (SEAL)
    WILLIAM N. ADKINS, Member Manager


WATERFRONT GROUP FLORIDA, LLC


By: _____ (SEAL)
    WILLIAM N. ADKINS, Member Manager


NC MOUNTAIN INVESTMENTS, LLC


By: _____ (SEAL)
    WILLIAM N. ADKINS, Member Manager


_____ (SEAL)
WILLIAM N. ADKINS


_____ (SEAL)
MARK R. ADKINS


_____ (SEAL)
LAVINIA ADKINS


Page 4 of 10

BRANCH BANKING AND TRUST COMPANY

ATTEST: _____          By: _____ (SEAL)
                                                 Sean Marsden, Assistant Vice President

## Acknowledgments

STATE OF NORTH CAROLINA          )

CITY/COUNTY OF Mecklenburg ) to-wit:


    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Waterfront Group NC, LLC a North Carolina Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Waterfront Group NC, LLC by signing the name of the Limited Liability Company by himself as Member Manager.


    Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

                                       Notary Public
                                       My commission expires ___7/28/12___

STATE OF NORTH CAROLINA          )

CITY/COUNTY OF Mecklenburg ) to-wit:


    I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Landstar Development, LLC a Tennessee Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Landstar Development, LLC by signing the name of the Limited Liability Company by himself as Member Manager.


    Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

                                       Notary Public

                                       My Commission Expires: ___7/28/12___

Page 5 of 10

30

STATE OF NORTH CAROLINA            )

CITY/COUNTY OF Mecklenburg to-wit:


I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be the President of Adkins Land Group, Inc. a Delaware Corporation, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized President of said Adkins Land Group, Inc. by signing the name of the Corporation by himself as President.


Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public

My Commission Expires:

7/28/12


STATE OF NORTH CAROLINA            )

CITY/COUNTY OF Mecklenburg ) to-wit:


I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be the President of Swiper Lot Clearing, Inc. a North Carolina Corporation, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized President of said Swiper Lot Clearing, Inc. by signing the name of the Corporation by himself as President.


Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

Notary Public

My Commission Expires:

7/28/12

Page 6 of 10

31)

STATE OF NORTH CAROLINA          )

CITY/COUNTY OF Mecklenburg to-wit:


I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be the President of Waterfront Group, Inc. a Virginia Corporation, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized President of said Waterfront Group, Inc. by signing the name of the Corporation by himself as President.


Given under my hand and official seal this 23rd day of August, 2010.

_Ann Marie Wil._
Notary Public

My Commission Expires:          7/28/12


STATE OF NORTH CAROLINA          )

CITY/COUNTY OF Mecklenburg to-wit:


I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Adkins Aviation, LLC a Delaware Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Adkins Aviation, LLC by signing the name of the Limited Liability Company by himself as Member Manager.


Given under my hand and official seal this 23rd day of August, 2010.

_Ann Marie Wil._
Notary Public

My Commission Expires:          7/28/12

Page 7 of 10

32

STATE OF NORTH CAROLINA           )

CITY/COUNTY OF _Mecklenberg_ ) to-wit:

I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Waterfront Group, LLC a Kentucky Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Waterfront Group, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

_____
Notary Public

My Commission Expires: _7/28/12_

STATE OF NORTH CAROLINA           )

CITY/COUNTY OF _Mecklenberg_ ) to-wit:

I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of Waterfront Group Florida, LLC a Florida Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said Waterfront Group Florida, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

_____
Notary Public

My Commission Expires: _7/28/12_

Page 8 of 10

(33)

STATE OF NORTH CAROLINA            )
CITY/COUNTY OF Mecklenburg  ) to-wit:

I HEREBY CERTIFY, that on this 23rd day of August, 2010, before me, the undersigned, a Notary Public of the State aforesaid, personally appeared William N. Adkins, who acknowledged himself to be a Member Manager of NC Mountain Investments, LLC a North Carolina Limited Liability Company, who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he, being so authorized to do, executed the foregoing instrument for the purposes therein contained as the duly authorized Member Manager of said NC Mountain Investments, LLC by signing the name of the Limited Liability Company by himself as Member Manager.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

_____
Notary Public

My Commission Expires:  _7/28/12_


STATE OF NORTH CAROLINA            )
CITY/COUNTY OF Mecklenburg  ) to-wit:

I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared William N. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

_____
Notary Public
My commission expires: _7/28/12_

Page 9 of 10



STATE OF NORTH CAROLINA          )

CITY/COUNTY OF _Mecklenburg_ ) to-wit:

 

 

I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Mark R. Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

 

Given under my hand and official seal this 23rd day of August, 2010.



(SEAL)

_____
Notary Public
My commission expires: _7/28/12_

 

STATE OF NORTH CAROLINA          )

CITY/COUNTY OF _Mecklenburg_ ) to-wit:

 

 

I HEREBY CERTIFY that on this 23rd day of August, 2010, before me, the subscriber, a Notary Public of the State aforesaid, personally appeared Lavinia Adkins who is personally known to me, or has been satisfactorily proven to be, the person whose name is subscribed to the foregoing instrument, and he acknowledged that he executed the foregoing instrument for the purposes therein contained.

 

Given under my hand and official seal this 23rd day of August, 2010.

(SEAL)

_____
Notary Public
My commission expires: _7/28/12_

 

Page 10 of 10

35